UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-880-JD-MGG |
| SIMIC, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Scruggs alleges that, around November 3, 2021, two books he ordered arrived at the facility. He was told he could not have one of the books because it was a hardback book. Scruggs asked Mail Room Clerk Simic and Mail Room Clerk P. Everly to send him the one that was not a hardback book. He did not receive any books in response to his request.

He ordered two additional books, and they arrived in January 2022. Again, Scruggs was told by Simic and Everly that one of the books was a hardback book, and both books were withheld. As Scruggs was writing a grievance regarding the failure to deliver the book that was not a hardback, Simic and Everly sent Scruggs two books from the first shipment, but so much time had passed that Scruggs forgot he had ordered the books and sent them back, indicating that they were not his. However, when the books from the first shipment were sent, Scruggs learned that neither book was hardback. Thus, Scruggs concludes that Simic and Everly lied when they told him that one of the books was a hardback book. He believes they lied because they wanted to keep his book or because they did not want him to have the book. He is suing because he believes the books in the first shipment and the paperback book in the second shipment were wrongfully withheld from him. The paperback in the second shipment was a rhyming dictionary, and not having it hindered his writing of a book.

> As a prisoner, [a plaintiff] "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974). Encompassed within the First Amendment is the right to be free from certain interference with mail correspondence, *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974); *Martin v. Brewer*, 830 F.2d 76, 77-78 (7th Cir.1987), the right to receive and read written publications, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989) (applying reasonableness standard to prison regulations restricting receipt of publications); *Kincaid v. Rusk*, 670 F.2d 737, 744-45 (7th Cir.1982), the right of free exercise of religion, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987); *Richard v. White*, 957 F.2d 471, 474 (7th Cir.1992), and the right of access to courts, *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495 (1977); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir.1992).

*Nobles v. Hoffman*, 1 F.3d 1244, 1244? (7th Cir. 1993). Regulations governing receipt of publications by prisoners are analyzed under the reasonableness standard, and prison

regulations are valid if they are reasonably related to legitimate penological interests, such as security. *Thornburgh v. Abbott*, 490 U.S. 402 (1989).

Scruggs does not challenge the regulation preventing him from possessing books with hardback covers.[1] Instead, Scruggs alleges that Simic and Everly deliberately withheld print media from him that was permissible pursuant to the prison's own policy and without any legitimate justification. Discovery may later prove otherwise, but the complaint nonetheless states a claim against Simic and Everly for withholding paperback books without justification in November 2021, and January 2022, in violation of his First Amendment right to receive and read print media.[2]

Scruggs represents that the prison's policy permits him to have hardback books that are ordered in error sent home if he pays the postage. Simic and Everly provided Scruggs with a form to use to request that the hardback book in the second shipment be sent home. Scruggs filled it out and had it in his room for about a week. His caseworker at the time, Caseworker Kennerk, did not like coming to see Scruggs because he was housed in a different area than other inmates assigned to her and because Scruggs had

---

[1] Scruggs mentions in passing that Simic and Everly gave a white inmate a hardback book when they denied him hardback books. Scruggs asserts that this is an equal protection violation, but he provides no factual details whatsoever regarding this circumstance, including when it occurred, who received the hardback book, or how Scruggs knows that Simic and Everly are responsible for providing the inmate with the hardback book. Therefore, this allegation is insufficient to state a claim.

[2] In addition, Scruggs asserts that Everly and Simic violated his rights pursuant to the Equal Protection Clause. However, proceeding on different constitutional theories based on the same facts is redundant. *See Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) ("The remainder of Williams's substantive legal theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim.); *Conyers v. Abitz*, 416 F.3d 580, (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (Analyzing allegations under the most "explicit source[s] of constitutional protection."). Here, the most explicit constitutional protection is the First Amendment.

reported Caseworker Kennerk to Case Manager Malfese and Unit Team Manager Cornett for using the Hitler salute. Scruggs asked another caseworker, Officer Krause, to have Caseworker Kennerk come get his paperwork. When Caseworker Kennerk arrived, she insisted that her only obligation was to do Scruggs' thirty-day reviews and that she does not need to come see if he has legal mail every day. She begrudgingly took the form, entered the officers' control room, and threw it in the trash. Scruggs claims this violates prison policy, his due process right to send books home, his right to access print media even if only once he is released, and his equal protection rights.

While Caseworker Kennerk's actions allegedly violated prison policy, a policy violation does not necessarily amount to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

Caseworker Kennerk's actions may have caused Scruggs to be deprived of a book he paid for, but that likewise does not amount to a cause of action. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.")

4

Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Scruggs' argument that his right to receive and read print media *following his release* has been violated is unconvincing. While he may not have access to his copy of a particular book upon his release, his right to receive and read it following his release is not impacted. Scruggs is not impeded from repurchasing or borrowing the book from a library following his release.

Scruggs' argument that Caseworker Kennerk violated his equal protection rights likewise fails to hold water. To state an equal protection claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . .." *Id*. at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Thus, he must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* Scruggs alleges he was singled out because Caseworker Kennerk resented walking to his housing unit, because he reported her for engaging in the Hitler

5

salute, and because he complained about her not doing her job to Krause. Scruggs, however, has not identified himself as a member of any particular group – protected or otherwise - that was singled out for disparate treatment by Caseworker Kennerk.

Scruggs further claims that Kennerk threw the form away in retaliation for reporting her to Krause for not doing her job or in retaliation for reporting her Hitler salute to Case Manager Malfese and Unit Team Manager Cornett. "To prevail on his First Amendment retaliation claim, [Scruggs] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). When determining whether an action is sufficiently adverse, courts consider "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman*, 951 F.3d at 881. Having a single form necessary to have a hardback book shipped home destroyed (resulting in the potential loss of the book) may cause someone to seek out help from another individual in the future, but it is unlikely to deter a person of average firmness from engaging in future First Amendment activity.

Scruggs reported what Caseworker Kennerk did to his form to Krause, Malfese, Cornett, Everly, and Simic. He requested that they assist him in obtaining another form

6

so he could send the book home. They did not help Scruggs obtain the form. Scruggs believes that this too violated his right to access the U.S. mail and print media. The book, however, was not permitted because it was a hardback, so his right to print media was not impinged. As for his right to access the mail, "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009). Krause, Malfese, Cornett, Everly, and Simic are not liable for Caseworker Kennerk's alleged wrongdoing simply because they knew about it and failed to take steps to remedy it.

Previously Scruggs received receipts with his books. Now the mail room destroys the receipts because of the possibility they could contain drugs. The facility does not make a copy of the receipts for Scruggs, so he is unable to verify whether he received his whole order and, if he did not, whether he has a store credit. He believes that the defendants keep the books they don't want him to have, and he wants to sue whoever is responsible for him not receiving books he paid for. However, without the receipts, he cannot prove whether it was the book company or prison staff that are responsible for his loss. He claims that, without the receipt, he cannot prove the mailroom kept his books. Therefore, he believes this practice has blocked his access to the courts because he does not have the evidence that he needs to sue the book company or file a tort claim against the mailroom staff.

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v.*

*Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Here, Scruggs merely speculates that the book seller he purchases from may not have sent all books to the prison. He does not identify any particular book he ordered and did not receive other than the rhyming dictionary from the January 2022, shipment, and he knows that was received by the prison. The missing receipts are not an impediment to Scruggs' pursuit of a tort claim based on the value of the missing

8

hardback book, if he is so inclined. Moreover, he has not demonstrated that evidence of the receipts could not be developed through discovery in that case. Thus, while it is understandable that Scruggs would like copies of the packing slips or receipts that arrive with his books, he has not demonstrated that any non-frivolous claims have been prejudiced due to the failure to provide them. Therefore, he cannot proceed on an access to the courts claim based on the missing receipts or packing slips.

For these reasons, the court:

(1) GRANTS Christopher L. Scruggs leave to proceed against Mail Room Clerk Simic and Mail Room Clerk P. Everly in their individual capacities for compensatory and punitive damages for withholding paperback books that did not violate prison policy in November 2021, and January 2022, in violation of the First Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Caseworker Kennerk, Caseworker Kraus, Case Manager Malfese, and Unit Team Manager Cornett;

(4) DIRECTS Christopher L. Scruggs to make arrangements to serve Mail Room Clerk Simic and Mail Room Clerk P. Everly with a copy of this order and the complaint (ECF 2); and

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), Mail Room Clerk Simic and Mail Room Clerk P. Everly to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 26, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT