2UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-880-SJF |
| SIMIC, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds against Mailroom Clerks Everly and Simic on: (1) a First Amendment claim for damages for withholding paperback books that did not violate prison policy from November 2021 to January 2022; (2) a First Amendment claim for damages for interfering with his incoming mail by withholding receipts or packing slips sent with print media; and (3) a First Amendment claim for injunctive relief claim to receive receipts or packing slips sent with print media. ECF 14. On April 4, 2025, the defendants moved for summary judgment on each of these claims. ECF 100.

In his response, Scruggs expressly waived the claim on the withholding of paperback books. ECF 118 at 1. The court accepts the waiver of this claim and will focus on the arguments on the two remaining claims below. The court also grants the motion to extend the deadline to file a reply brief and accepts the reply brief as timely. ECF 130, ECF 131.

FACTS

In the complaint filed on October 18, 2022, Scruggs alleges that he had ordered several books and magazines and that the "facility" withheld the receipts. ECF 2. He alleged that he wrote to the mail room staff who said they destroy receipts. *Id.* According to Scruggs, he needs these receipts to pursue compensation from the book companies or from the State if his books go missing. *Id.*

Mailroom Clerk Everly has worked in the mail room at the Westville Correctional Facility from 2010 to 2020 and became the mail room supervisor there in August 2022. ECF 70 at 2. Mailroom Clerk Simic worked in the mail room for about two years but stopped in March or April 2022. ECF 74 at 2. Departmental policy states, "

> Correspondence sent to an incarcerated individual in an envelope or package that is made of or contains materials that are considered to be a potential threat to the safety, security, or orderly operation of the facility (e.g., plastic "bubble wrap" or "peanuts", plastic wrap, insulation, cardboard boxes, hard cardboard envelopes or Priority or Express Mail envelopes), may be withheld from the incarcerated individual. If the packaging or packing materials are determined to be a security threat, the facility shall remove the packaging or packing materials and place or replace the correspondence or items in a suitable envelope or container. The facility shall ensure that the incarcerated individual is notified as to the name and address of the sender, the postmark and the date the correspondence was received at the facility. This notification may be by use of State Form 11984 or other suitable means. The employee taking this action shall sign indicating the action taken. The facility shall ensure that the population is aware of the types of prohibited envelopes/packages and the procedures for processing these types of correspondence. Packaging or packing materials withheld pursuant to these procedures may be disposed of as soon as the incarcerated individual receives the contents of the correspondence and the notification. A Facility Directive shall be developed indicating the appropriate procedures for notifying the incarcerated individual of any action taken on correspondence and that the correspondence shall not be delayed any more than absolutely necessary.

2

ECF 86-1 at 17-18.

According to Everly, the Westville Correctional Facility classifies receipts as packing material and dispose of them accordingly. ECF 64-1 at 3-4; ECF 70 at 2-4. The reason for disposing of receipts is to prevent a specific type of fraud; some inmates have made photocopies of receipts to falsify records and to submit false tort claims for loss of property to obtain compensation. ECF 70 at 3-4. Everly has had personal experience with such false claims.[1] *Id.*

Mailroom Clerk Everly represents that the disposal of receipts takes place in the Westville Correctional Facility Annex, which is located "outside the Westville facility."[2][3] ECF 70 at 3-4. A facility directive requires that the initial receipt and inspection of inmate mail take place in the annex, stating "All correspondence received

---

[1] Scruggs attempts to dispute this fact by showing that inmates are not permitted to make copies of receipts for fraudulent purposes and that law library staff take measures to ensure that requested copies are related to a valid legal claim. But it seems unlikely that inmates would inform law librarians of their fraudulent intent or that law librarians staff possess flawless powers of fraud detection.

He also attempts to dispute this fact by contending that legal mail is sealed before it is submitted to the mail room, rendering Everly unable to ever learn of any fraudulent tort claims. Even accepting that all prisoners diligently seal their legal mail in their cells, there are other plausible ways in which a staff member could learn of a fraudulent tort claim, such as a conversation with an investigator or prison disciplinary records.

[2] Here, the court observes some ambiguity regarding the location of the annex. Though Everly represents that the annex is "outside the Westville facility," the facility directive states that "All correspondence received by the facility" will be opened in the annex, suggesting that the annex is part of the facility. In any event, it is clear from the record that, at minimum, the annex is a building that is separate from the mailroom where Everly and Simic worked.

[3] Scruggs attempts to dispute this fact with his interpretation the facility directive. The facility directive requires the delivery from the annex to the mail room for inspection and removal of contraband, and, according to Scruggs, this means that staff dispose of receipts in the mail room rather than the annex. But, according to the facility directive, mail is also opened and inspected to some degree in the annex, and the facility directive does not prohibit the removal of packing materials or receipts from prisoner mail in the annex. Nor does it expressly address the disposal of receipts. At base, the facility directive is entirely ambiguous on this point, so the court finds that this material fact is undisputed.

3

by the facility from the Westville Post Office will be opened by a staff person in the Mail Building Annex." ECF 50-1 at 36. Neither Everly nor Simic destroyed Scruggs' receipts. ECF 53 at 2, 4; ECF 56 at 2-3.

On November 16, 2021, Scruggs submitted a request for interview form to the mail room, and Simic responded as follows:

> **Reason for request:** I sent out a letter to my sister with a remittance request form in it and a letter to a book company with (2) remittance request forms in it. Have my letters/mail been sent out yet? I ask because I haven't received my copy of the remittance slip yet."
>
> **Action:** All outgoing mail is sent the day we get it. We do not hold any outgoing mail.

ECF 70-1 at 10.

In July 2022, Scruggs submitted to the mail room two "Notices of Lawsuit" on requests for interview forms regarding the disposal of his receipts, and Mailroom Clerk Everly responded. ECF 64-1 at 3-4. First, on July 25, 2022:

> **Reason for Request:** I get book orders through the U.S. Mail. These book orders come with receipts and notices. You are giving me my books but are keeping my receipts so your staff can steal my books and I have no evidence receipts. You are stealing part of my U.S. Mail. I want my receipts and notices. You cannot just keep parts of my mail.
>
> **Action:** Mr. Scruggs, I am not sure as to what the problem is. You get your books. Not all book orders come with receipts but when they do they are removed along with the original packaging.

*Id.* at 3.

Second, on July 26, 2022:

> **Reason for Request:** You are not supposed to remove my receipts with packaging. You know that you are supposed to make a copy of my receipts with packaging. You know that you are supposed to make me a

4

> copy of my receipts just like any other mail. My receipts are for me to have evidence if I need to file a tort claim. You are stealing my legal evidence so staff can get away with stealing my property. I want my copy of my receipts. Why would I not want my receipts and/or notices.
>
> **Action:** Mr. Scruggs, the receipts are part of the packaging that you are unable to have. No loose papers come in because of the possibility of them being tampered with.

*Id.* at 4. At deposition, Scruggs testified that he twice asked Everly and Simic to stop disposing of his receipts when they were together. ECF 86-2 at 29-32. According to Scruggs, Everly responded that the receipts are thrown away because they are packing material, and Simid "really did not respond." *Id.*

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

DISCUSSION

Personal Involvement

The defendants argue that they are entitled to summary judgment because the record contains no evidence that they were personally involved in withholding Scruggs' receipts. Scruggs disagrees with respect to both defendants. "For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

With respect to Mailroom Clerk Simic, Scruggs notes that Simic has represented in her answers to interrogatories that she mainly handled legal mail but occasionally assisted with packages. He argues that her response to his request for interview in November 2021 suggests that she also handled outgoing mail. Scruggs appears to argue that, because Simic did not accurately represent that she mainly handled legal mail, a reasonable jury could also find that she was untruthful about not disposing of his receipts.

The court finds that this argument relies on two erroneous suppositions. First, the fact that Simic provided Scruggs with information about outgoing mail does not establish Simic handled outgoing mail; it merely establishes that she had some familiarity with the related procedures, which she could have obtained in ways other than personally handling outgoing mail. Second, even accepting that she handled outgoing mail, it is unclear how this fact would allow a reasonable jury to find that she

6

also disposed of his receipts. While a reasonable jury could discredit any portion of Simic's testimony based on inconsistent statements, it could not find that Simic disposed of Scruggs' receipts without evidence affirmatively supporting that fact. The record contains none with respect to Mailroom Clerk Simic.

      Scruggs primarily argues that Mailroom Clerk Everly was personally involved because she was a supervisor who knew about the disposal of receipts as shown by her responses to his Notices of Lawsuit in July 2022. Under 42 U.S.C. § 1983 supervisors can be held responsible only for their own actions, not for the actions of the people they supervise. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). A supervisor has personal involvement if "the relevant official caused the constitutional deprivation at issue or acquiesced in some demonstrable way in the alleged constitutional violation." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 828 (7th Cir. 2022) (quotation marks omitted). For a supervisor to be held liable, he must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Further, the supervisor's facilitating, approving, condoning, or conscious ignoring must be purposeful, knowing, or reckless; a supervisor is not liable for acting negligently. *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 828 (7th Cir. 2022).

      The court finds that the record contains sufficient evidence for a reasonable jury to find that Mailroom Clerk Everly condoned the practice of destroying Scruggs' receipts and caused the destruction of some portion of them. The record indicates that Scruggs informed Mailroom Clerk Everly of the practice in July 2022 and that mail

room staff in the annex destroyed his receipts. Critically, with this knowledge, Mailroom Clerk Everly assumed the role of mailroom supervisor the following month and allowed her subordinates to continue this practice. Therefore, the court will consider the arguments on whether the practice violated Scruggs' First Amendment rights.

First Amendment Violation

Mailroom Clerks Everly and Simic argue that the destruction of the receipts did not violate Scruggs' First Amendment rights. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The relevant factors for consideration include: "(1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the inmates have access to alternative means of exercising the restricted right; (3) the impact an accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether the regulation is an exaggerated response to prison concerns." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). "While the burden of persuasion is on the prisoner to disprove the validity of a regulation, defendants must still articulate their legitimate governmental

8

interest in the regulation." *Id.* "Courts are to accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

The defendants have asserted that the reason for withholding receipts is to prevent inmates from submitting false tort claims for missing publications. The prevention of crime or fraud is a legitimate penological interest. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). Regarding alternative means, Scruggs concedes that he was able to write to some book companies and obtain his receipts. While some other book companies may not have responded, this avenue nevertheless remains available to Scruggs. He also has other avenues for accessing the information contained on receipts given that he placed the order and has access to his prison trust account records. Ultimately, Scruggs' primary concern is that he might be unable to obtain compensation for missing or undelivered print materials. Obtaining such compensation without the immediate delivery of receipts might require additional steps, but it is unclear why Scruggs would be unable to do so entirely. The court understands that these alternative avenues may be inferior to receiving the receipts with the books, but "[t]hese alternatives need not be ideal to [the inmate] for them to adequately satisfy the concerns raised by the second *Turner* factor." *Singer v. Raemisch*, 593 F.3d 529, 539 (7th Cir. 2010).

Scruggs further argues that the availability of the same information through other avenues undermines the purpose of the practice of withholding receipts from

9

inmates. To some degree, he is correct; inmates could attempt to commit fraud with the information obtained via these alternative avenues. However, it is not irrational to presume that not every inmate will take the additional steps to obtain receipts and that, as a result, fewer incidents of fraudulent tort claims will arise.

The court finds that the record is scarce on information that is materially relevant to the third and fourth factors. While Mailroom Clerk Everly has attested to personally experiencing such fraudulent claims, the record lacks evidence as to their frequency or the expense incurred when an inmate submits such a fraudulent claim. The court notes, however, that disposing of receipts is not a particularly onerous or extreme measure within the broader context of prison life, and the relatively minor nature of this practice substantially limits the extent to which it could be considered an exaggerated response even with a more robust record. In any event, the burden to persuade that the practice of withholding receipts is unconstitutional rests with Scruggs, and the court cannot find that a reasonable jury could find that he has satisfied this burden on this record.

Scruggs further contends that the practice of disposing of receipts is not a "real prison policy/regulation," but this contention misses the mark. ECF 118 at 17. The Seventh Circuit has applied the First Amendment analysis in *Turner* in the context of isolated decisions in the context of prison employment and discipline. *See e.g., Whitfield v. Spiller*, 76 F.4th 698, 709 (7th Cir. 2023); *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010). He also suggests that the court cannot credit the asserted penological interest because the defendants have been inconsistent with explaining the reasons for the practice of disposing of receipts. However, Mailroom Clerk Everly's reference to policy

10

provision on packing materials and to tampering are entirely consistent with the fraud prevention rationale. The interest in preventing fraud may have motivated the interpretation of the policy provision on packing materials as extending to receipts, and inmates reasonably might tamper with receipts before fraudulently submitting them as evidence.

According to Scruggs, the defendants have also asserted that the receipt disposal practice was an effort to keep drugs out of the prison. While this secondary reason might be readily addressed by copying the receipts instead of disposing of them, the defendants do not assert this reason at the summary judgment stage. Even if they had, Scruggs could not prevail by demonstrating that only one of two asserted reasons for the practice was irrational. Nor does the fact that the defendants have previously asserted a second reason for the practice, irrational or not, undermine the legitimacy of the fraud prevention reason. Scruggs attempts to characterize the fraud prevention reason as a post-hoc rationalization that should not be credited, but the court rejects this characterization. Significantly, the record indicates that Mailroom Clerk Everly referenced inmate tampering in a response to Scruggs in July 2022 before Scruggs filed this lawsuit, and it is unclear why correctional staff would be concerned with receipt tampering absent a related concern that such receipts might be fraudulently submitted.

In sum, while Mailroom Clerk Everly's personal involvement remains disputed, no reasonable jury could find on this record that Mailroom Clerk Simic was personally involved in disposing of Scruggs' receipts. Further, no reasonable jury could find on this record that the practice of disposing of receipts violated Scruggs' First Amendment

rights. Therefore, the court grants the defendants' motion for summary judgment on the First Amendment claim for damages.

## Injunctive Relief Claim

The defendants argue that that they are entitled to summary judgment on the injunctive relief claim to prevent the disposal of receipts. "Permanent injunctive relief is appropriate if the party seeking the injunction demonstrates (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Vaughn v. Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020). "Since a permanent injunction is a form of relief on the merits, the plaintiff must also show not just a probability of success on the merits but actual success." *Id.* Moreover, the Prison Litigation Reform Act (PLRA) prevents this court from granting "any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

As detailed above, Scruggs has not adequately demonstrated that the practice of receipt disposal has violated his First Amendment rights, so he has not shown success on the merits of his First Amendment claim. The PLRA similarly precludes the court from granting injunctive relief; because Scruggs has not adequately demonstrated that a violation occurred, he cannot demonstrate that an injunction is necessary to correct it.

It is also unclear how he has suffered irreparable injury. At most, Scruggs is deprived of immediate access to confirmation of information already within his possession; the name and contact information of the seller, the ordered materials, the cost, and whether he has received them or not. Obtaining such confirmation through other means may be more difficult but remains reasonably possible, so it is unclear how the practice of disposing of receipts inflicts irreparable injury. It is also unclear why Scruggs would lack legal remedies for missing publications merely due to delayed access to a receipt or even lack of access to a receipt; a receipt may be the optimal way to prove that one has purchased a particular book, but it is not the only way. The degree of hardship that the prisons would incur by abandoning the receipt disposal practice is unclear, but the efforts required to obtain additional confirmation when necessary does not strike the court as unreasonably onerous. Finally, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

In sum, the court finds that Scruggs cannot prevail on his injunctive relief claim because he has not demonstrated a First Amendment violation and that, on balance, the relevant factors weigh in favor of the defendants. Therefore, the court grants the motion for summary judgment on the injunctive relief claim. No other claims remain, so this case will be dismissed.

As a final matter, Scruggs filed a motion for leave to file a sur-reply and a motion to set a deadline for a sur-reply. He seeks to address the defendants' critiques of the evidence used to support his factual allegations and his purported waiver of certain issues. However, such a sur-reply is unnecessary. The court would not benefit from additional briefing on whether certain factual allegations are supported with appropriate evidence. Moreover, the court did not resolve any claims or arguments on the basis of waiver with the exception of Scruggs' express waiver of the claim relating to the withholding of books. Therefore, these motions are denied.

For these reasons, the court:

(1) GRANTS the motion to extend (ECF 130);

(2) DENIES the motion for leave to file a sur-reply (ECF 133);

(3) DENIES the motion for a deadline to file a sur-reply (ECF 134);

(4) GRANTS the motion for summary judgment (ECF 100); and

(5) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED on September 10, 2025

s/Scott J. Frankel<br>
Scott J. Frankel<br>
United States Magistrate Judge