UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

    Plaintiff,

    v.     CAUSE NO. 3:22-CV-880-SJF

SIMIC, et al.,

    Defendants.

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed substantially identical motions to reconsider the order granting summary judgment in favor of the defendants under Fed. R. Civ. R. 59(e) and Fed. R. Civ. P. 60(b)(6). ECF 139, ECF 141. "Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Eberhardt v. Walsh*, 122 F.4th 681, 688 (7th Cir. 2024). "Belated factual or legal attacks are viewed with great suspicion, and intentionally withholding essential facts for later use on reconsideration is flatly prohibited." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* "Further, motions for reconsideration generally are not encouraged . . . because, in general, a district court's rulings are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008).

In this case, Scruggs proceeded against Mailroom Clerks Everly and Simic on First Amendment claims in connection with the delivery of books. ECF 14. On April 4, 2025, the defendants moved for summary judgment on each of these claims. ECF 100. On September 10, 2025, the court entered an order granting the motion for summary judgment on all claims. ECF 135. In that order, the court found a valid rational connection between the practice of withholding receipts for publications from inmates and the facility's interest in preventing inmates from submitting false tort claims for missing publications. *Id.* at 9. On October 10, 2025, Scruggs filed the pending motions to reconsider. ECF 139 at 28, ECF 141 at 26.

To start, Scruggs did not file a motion to reconsider within 28 days of the summary judgment order and thus his request for relief under Fed. R. Civ. P. 59(e) is untimely. *See* Fed. R. Civ. P. 59(e). Further, after reviewing Scruggs' arguments in which he asserts that the court misapplied the controlling legal standards and precedent, the court finds that the motion seeking relief under Rule 60(b)(6) is more appropriately characterized as seeking relief under Rule 60(b)(1). *See Buck v. Davis*, 580 U.S. 100, 123 (2017) ("[R]elief under Rule 60(b)(6) is available only in extraordinary circumstances."); *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) ("[Th]e first three clauses of Rule 60(b) and the catchall clause are mutually exclusive."). Moreover, the court would not grant relief under any of these rule provisions because the motions to reconsider merely seek to rehash previously rejected arguments. Nevertheless, the court will address three judicial opinions offered by Scruggs as analogous cases: *Shimer v. Washington*, 100 F.3d

2

506 (7th Cir. 1996); *Jackson v. Pollard*, 208 F. App'x 457 (7th Cir. 2006); and *Riker v. Lemmon*, 798 F.3d 546 (7th Cir. 2015).

In *Shimer*, the inmate challenged an unwritten policy preventing prison employees from writing directly to the clemency board, and the Seventh Circuit reversed the district court's order granting summary judgment. 100 F.3d at 508, 510. The appellate court reasoned that "[t]he prison administration must proffer some evidence to support its restriction of prison guards constitutional rights" and "cannot avoid court scrutiny by reflexive, rote assertions." *Id.* at 509-10. The State defendant contended that governmental interests justifying the practice included protection against retaliation for negative evaluations and the potential for bribes for positive evaluations, but the Seventh Circuit found no evidence to substantiate these justifications. *Id.* at 510. The Seventh Circuit also found it "particularly puzzling" that prison employees could write letters for an inmate's departmental file that would be made available upon request to the clemency board given that it appeared to present the same risks as allowing prison employees to write to the clemency board directly. *Id.*

Before concluding the *Shimer* opinion, the Seventh Circuit offered the following cautionary words:

> We tread cautiously when impacting in a prison system and are cognizant of our relative naivete when it comes to the reality of security risks. However, we do engage in an actual, albeit limited, inquiry. Appellees must provide the court with something—an affidavit from a prison official setting out the policy and the reasons for it; precedent policies; regulatory history; academic literature—on which to hang their clemency communication policy.

3

> Although we remain acutely aware of our remove from the day to day logistics of managing a prison, we suggest that perhaps our insistence on some evidence to support this policy will provide the prison administration with an opportunity to review its current ban on direct communication between prison guards and the Board. We recognize that prison populations are burgeoning and we imagine clemency petitions to be increasing at a commensurate rate. With expanded opportunity in the future, letters from prison guards written directly to the Prisoner Review Board could arguably both inform the Board and provide an incentive for model prisoner behavior. On the heels of this observation, we hasten to add that such policy making, consistent with the law, is, of course, wholly in the hands of the prison administration. It is not necessary that we agree with the prison administration's chosen course, but only that we be able to point to some rational basis for it.

*Id.*

In *Jackson*, the inmate challenged a policy prohibiting him from receiving, by mail, paper copies of emails responding to his personal profile on an internet-based pen pal service. 208 Fed. Appx. at 458. In defending the policy, the State defendants asserted the penological interests of protecting the public from being manipulated by criminals and to preserve resources that might be depleted by allowing the delivery of such correspondence. *Id.* at 459. In reversing the entry of summary judgment, the Seventh Circuit observed that inmates had several alternatives permitted by departmental policy for potential manipulation of the public, including through personal web pages, solicitation of non-email responses through personal web pages, by responding to other email deliveries unrelated to personal web pages, and by going through other types of pen pal services. *Id.* at 460-61. The Seventh Circuit further found that the State defendants offered only bare conclusions to support the asserted penological interests. *Id.* at 461.

In *Riker*, a former prison employee challenged the correctional officials' denial of her request to marry an inmate for the stated reason that the former employee was not on the inmate's list of approved visitors. 798 F.3d at 548-49. The State defendants asserted security interests, contending that a former employee who has violated departmental policy is more likely to engage in other misconduct and that a former employee could share confidential information obtained through prison employment with the inmate. *Id.* at 555. The Seventh Circuit rejected the State defendants' effort to equate a one-time request to enter the prison for a marriage ceremony with a request for general visitation rights and held that a visitation policy cannot, by itself, justify prohibiting an inmate marriage. *Id.* at 556-57. The Seventh Circuit also noted the lack of evidence suggesting that prohibiting marriage served to deter employee misconduct or that any such deterrence was necessary. *Id.* at 557.

The court finds that these three opinions are distinguishable from this case for two reasons. First, the defendants in this case offered some evidence to substantiate the need to prevent and deter fraudulent tort claims. Specifically, Mail Clerk Everly has personal experience of instances in which inmates have copied and falsified receipts and used them to submit false tort claims for loss of property to obtain compensation. ECF 70 at 3-4. It is true that this evidentiary showing is not robust, relying on a sworn attestation without any specific details regarding these false tort claims. But it does constitute some evidence, which is all that the analogous cases cited by Scruggs' require. And, while Scruggs believes that he has adequately disputed this evidence for

5

purposes of summary judgment, the court disagrees for the reasons set forth in the summary judgment order.

Second, in *Shimer* and *Jackson*, the Seventh Circuit suggested that it was irrational for correctional policy to allow inmates to engage in other conduct that presented substantially similar concerns as the prohibited conduct. The court further observes that inmates' ease of engaging the permissible forms of conduct in *Shimer* and *Jackson* were also substantially similar to the ease of engaging in the prohibited conduct. For example, it strikes the court that the *Shimer* inmate could have just as easily bribed a prison employee to place a favorable letter in his departmental file and that such a letter would have been presented to the clemency board. Consequently, a fair reading of *Shimer* indicates that it was the comparative ease of engaging in permissible but otherwise similarly problematic forms of conduct that suggested that the practice of prohibiting prison employees from writing directly to the clemency board was irrational or arbitrary.

Here, while inmates might still submit fraudulent tort claims for missing publications by obtaining equivalent information in other ways, Scruggs concedes that these other ways are more difficult, requiring him write to vendors who may not respond, pay for office supplies, and to rely on his personal credibility and circumstantial evidence in order to persuade tort claim decisionmakers. ECF 118 at 19-21; ECF 141 at 24-25. The court reiterates that it is not irrational to presume that making a form of misconduct more onerous might act as a deterrent to those considering whether to engage in that form of misconduct. In sum, *Shimer*, *Riker*, and *Jackson* do not

6

persuade the court to vacate the order granting summary judgment in favor of the defendants.

For these reasons, the court DENIES the motions to reconsider (ECF 139, ECF 141).

SO ORDERED on October 21, 2025.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge